# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303



John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 24, 2014

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 13-12351-AA
Case Style: Ronald Smith, Jr. v. Harry Casey, et al
District Court Docket No: 1:12-cv-23795-UU

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Regina A. Veals-Gillis
Phone #: (404) 335-6163

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 13-12351
_____

District Court Docket No.
1:12-cv-23795-UU

RONALD LOUIS SMITH, JR.,
as Personal Representative of the Estate of Ronald Louis Smith,

                              Plaintiff - Appellant,

versus

HARRY WAYNE CASEY,
individually,
K.C. & THE SUNSHINE BAND, INC.,
a Florida Corporation,
SUNSHINE SOUND ENTERTAINMENT, INC.,
agent of Sunshine Sound Enterprises, Inc.,
HARRICK MUSIC, INC.,
a Florida Corporation,
JIMMIE HORACE HORNE, JR.,
individually,
f.k.a. Jimmy "Bo" Horne,
JOY PRODUCTIONS, INC.,
a Florida Corporation,

                                Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: January 22, 2014
For the Court: John Ley, Clerk of Court
By: Jeff R. Patch

**ISSUED AS MANDATE:  02/24/2014**

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12351
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-23795-UU

RONALD LOUIS SMITH, JR.,
as Personal Representative of the Estate of Ronald Louis Smith,

                                                        Plaintiff - Appellant,

versus

HARRY WAYNE CASEY,
individually,
K.C. & THE SUNSHINE BAND, INC.,
a Florida Corporation,
SUNSHINE SOUND ENTERTAINMENT, INC.,
agent of Sunshine Sound Enterprises, Inc.,
HARRICK MUSIC, INC.,
a Florida Corporation,
JIMMIE HORACE HORNE, JR.,
individually,
f.k.a. Jimmy "Bo" Horne,
JOY PRODUCTIONS, INC.,
a Florida Corporation,

                                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 22, 2014)

Before WILSON, FAY and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

At issue in this appeal is whether the author of a musical composition who assigned his rights in exchange for royalties may rely for purposes of standing to sue for infringement under the Copyright Act on a registration his publisher filed. Ronald Louis Smith, Jr., as representative for the estate of his late father, sued several entities with whom Ronald Louis Smith, Sr. (Smith), recorded music in the late 1970s. The estate alleged infringement of Smith's copyright in a musical composition entitled "Spank," along with a claim for breach of contract and a claim seeking a declaration of the validity of copyright transfer terminations the estate filed under 17 U.S.C. § 203. Concluding the estate lacked statutory standing to sue for infringement, the district court dismissed that claim and denied a motion to amend the complaint as futile. The court then concluded the declaratory-judgment claim was not ripe and declined to exercise supplemental jurisdiction over the contract claim. Because the conclusion that the estate lacked statutory standing to sue for copyright infringement was erroneous, we reverse.

2

I.

When reviewing a dismissal for failure to state a claim, we accept as true the allegations in the complaint and recite them in the light most favorable to the plaintiff. *See Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1252 (11th Cir. 2013). Smith wrote "Spank," and he later produced a recording of the song by another artist under a Recording Agreement he had signed with a company known at the time as Sunshine Sound Enterprises, Inc. (Sunshine Sound). Sunshine Sound released the record in early 1979 and registered a copyright for the sound recording. Smith's Recording Agreement contained a provision[1] requiring him — either with Sunshine Sound or a publishing company of its choosing — to "execute . . . a separate Songwriter's Agreement in respect of each . . . Composition" recorded under the agreement "in the form of Exhibit 'A' atttached hereto . . . ."[2] Under that form songwriter's contract, Smith would "sell[], assign[], and deliver[]" his rights in a composition in exchange for scheduled royalties for different uses of the work. In the event Smith failed to

---

[1] The provision purports both to immediately assign the composition copyrights for apparently unwritten copyrights to Sunshine Sound and to require Smith to later assign the same copyrights to either Sunshine Sound or another entity by separate agreement. In the procedural posture of this case, that provision is not so patently clear about the ownership of the "Spank" copyright as to obviate the need for development of a factual record on the issue.

[2] Although not attached to the complaint, we consider the Recording Agreement and appended form songwriter's contract in reviewing the complaint's allegations because that document was referred to in the complaint, is undisputed, and is central to the estate's claims. *See Starship Enters of Atlanta, Inc.*, 708 F.3d at 1253 n.13.

3

execute the form agreement for any given composition, he gave Sunshine Sound authority "to execute said agreement in [his] name."

With respect to "Spank," however, neither Smith nor Sunshine Sound acting on his behalf inked such an agreement. Nonetheless, around the same time it was recorded, Harrick Music, Inc. (Harrick Music), a publishing company affiliated with Sunshine Sound, registered a copyright for the musical composition "Spank," identifying Smith as composer and itself as claimant. Harrick Music checked a box on the registration indicating the song was not a composition made for hire.

Smith's relationship with Sunshine Sound deteriorated after "Spank" was released. As a result, on September 30, 1980, he signed a Release Agreement with the company terminating his recording contract and mutually releasing all claims and obligations under it "except as otherwise provided" in the Release. As relevant here, the Release stated that sound recordings made under the Recording Agreement remained Sunshine Sound's property and Sunshine Sound remained "obligated to [Smith] under the royalty provisions" of the Recording Agreement. The Release was wholly silent, however, as to where ownership rested for the copyrights in the musical compositions embodied on the recordings. And Harrick Music was not a party to the Release.

In the ensuing years, Smith acquiesced in Harrick Music's administration of the "Spank" composition copyright, but, he alleged, the company never remitted a

4

cent to him.  According to the complaint, neither did Sunshine Sound.  Under the Recording Agreement and the form songwriter's agreement attached to it, however, Smith was owed percentage royalties for the song's exploitation in exchange for assigning his rights to it.  So on November 28, 2011, shortly before his death, Smith through counsel sent a cease-and-desist letter revoking Harrick Music's authority to administer "Spank."  And Smith also filed with the Copyright Office four Notices of Termination, seeking to formally record his revocation.  Despite this, the defendants continued to commercially exploit the composition.

So on October 18, 2012, Smith's estate filed suit against Sunshine Sound, Harrick Music, and several related entities seeking, among other things, damages for infringement[3] from the November 2011 date of the cease-and-desist letter.  The estate also alleged the entities had breached agreements with Smith under the Recording Agreement for "Spank" and an album released under his own name in 1978 entitled *Party Freaks, Come On*.  And the estate sought a declaration of the validity of the termination notices it had filed.

Two defendants the Smith estate named — Jimmie Horne, Jr., who performed "Spank" on the recording Smith produced that was released under Horne's stage name Jimmy "Bo" Horne in 1979, and a related company called Joy

---

[3] The estate has expressly and repeatedly disclaimed any claim for infringement of the "Spank" sound recording. Thus, only the copyright in the underlying musical composition is at issue in this case.

5

Productions, Inc. — moved to dismiss the infringement count as to them.  No other defendant joined the motion.  But, after reviewing it, the district court concluded Smith lacked statutory standing to pursue his copyright claim and *sua sponte* dismissed that count with prejudice as to all of the defendants.  Harrick Music, not Smith or his estate, had registered the copyright, the district court noted, and registration was a necessary precondition to filing suit for infringement.  The district court also observed that Smith's allegations were inadequate to state a plausible claim of infringement against Horne and Joy Productions but that it was possible the deficiency could be cured by amendment.  Doing so, however, would be "futile," the district court decided, "given that [the estate] lacks statutory standing to bring a copyright infringement charge at the present time."

    Smith's estate moved the court to reconsider its dismissal of the copyright infringement claim, contending statutory standing for the claim existed as a result of the registration Harrick Music had filed.  And the estate requested leave to file an amended complaint, stating that it could cure any deficiency if the allegations of infringement against Horne and Joy Productions were insufficient.  The district court denied the motion, without any word regarding the motion to amend, presumably resting upon its previous determination that amendment would be futile.  That decision was based on the court's finding that the Smith estate "may not rely on Harrick's copyright registration in order to bring a suit for copyright

6

infringement." Later, the court *sua sponte* dismissed the remainder of the estate's case, concluding the declaratory-judgment claim was unripe. Without that claim, the court concluded, there was no independent basis for federal subject matter jurisdiction, and the court declined to exercise supplemental jurisdiction over the estate's claims that Harrick Music and Sunshine Sound breached express and implied contracts with Smith. This is the estate's appeal.

## II.

Smith's estate argues the court was wrong to conclude it lacked statutory standing to bring an infringement claim and, concomitantly, abused its discretion in denying as futile leave to amend the complaint. As a result, the estate contends, an independent federal claim exists in the case, and the court should not have declined to exercise pendent jurisdiction over the breach-of-contract claim. Finally, the estate urges that its declaratory judgment claim was ripe for disposition. We agree with the first two points but disagree with the third.

We review *de novo* a district court's dismissal of a complaint for failure to state a claim upon which relief could be granted. *Starship Enters. of Atlanta, Inc.*, 708 F.3d at 1252. And we review for an abuse of discretion the denial of a motion to reconsider, *Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805-06 (11th Cir. 1993), reviewing any attendant question of law *de novo*, *see Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010).

7

"To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in the [work] and (2) defendants copied protected elements from the [work]." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) (alterations in original) (internal quotation marks omitted). "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411 [of the Copyright Act], to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Section § 411(a) provides, in turn, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with [the Act]." *Id.* at 411(a).

The 1976 Copyright Act's legislative history explains that Congress intended "'beneficial owner,'" as the term is used in § 501(b), to "include . . . an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." H.R. Rep. No. 94-1476, at 159 (1976). To our knowledge, each of our sister circuits to have confronted the situation has agreed that an author who assigns his legal rights to a work in exchange for royalties from its exploitation has a beneficial interest sufficient for statutory standing under § 501(b). *See Batiste v. Island Records Inc.*, 179 F.3d 217, 219-21 & n.2 (5th Cir. 1999) (stating that composers who had assigned composition to

8

music publisher in exchange for royalties could "properly assert . . . copyright infringement claims"); *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) ("When a composer assigns copyright title to a publisher in exchange for the payment of royalties, an equitable trust relationship is established between the two parties which gives the composer standing to sue for infringement of that copyright."); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1144 (9th Cir. 2003) ("Several other circuits have held that a creator may be a beneficial owner where a creator assigned all rights to a work, but the assignee was obligated to pay royalties to the composer if it exploited the work."); *Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987) (citing "an author who assigned his work in exchange for royalties" as "the classic example of a beneficial owner in the cases deciding standing to sue under the 1909 Act," and stating "Congress merely intended to codify the existing case law"); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.02[D] (stating that § 501(b)'s definition of beneficial owner "follows the law established by the courts under the 1909 Act"). By contrast, an author who creates a work within the scope of her employment under a "work for hire" agreement lacks statutory standing to maintain an infringement suit.[4] *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire,

---

[4] Horne and Joy Productions argue "Spank" was a work created for hire. Given that the complaint does not allege the "Spank" composition was a work for hire, the language of both the recording and form songwriter's agreements facially assign the copyright in exchange for

9

the employer or other person for whom the work was prepared is considered the author . . . ."); *Moran*, 827 F.3d at 182-83; *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883, 886-87 (9th Cir. 2005) (*en banc*) (quoting the legislative history regarding the meaning of beneficial ownership to distinguish creators of works for hire, who have no standing to sue).

Under this definition, the estate has a sufficient ownership interest for standing under § 501(b). According to Smith's allegations, he never signed any agreement giving Harrick Music the right to exploit the "Spank" copyright. But even were we to treat Smith's agreement to permit Sunshine Sound to execute the form songwriter's contract appended to his Recording Agreement as acquiescence to its terms for the "Spank" composition, Smith still would only have assigned his rights to the musical composition in exchange for royalties. Thus, he has at least a beneficial interest that satisfies § 501(b) of the Copyright Act.[5]

Section 501(b), however, contains a caveat. Even the beneficial owner of an exclusive right in a copyrighted work must still demonstrate compliance with the Act's formalities, which require "preregistration or registration of the copyright claim . . . in accordance with this title." 17 U.S.C. § 411(a). Harrick Music registered the copyright in the "Spank" composition, but Smith did not file a

---

royalties, and the copyright registration expressly states that it was not a work made for hire, the issue is at least so questionable as not to be capable of decision on a motion to dismiss.

[5] Because we conclude the estate has at least pleaded a sufficient beneficial interest for purposes of statutory standing, we expressly do not reach the alternative claim that the estate has a legal interest in the composition.

separate registration. Because Smith had not registered the work, the district court concluded, he lacked statutory standing. In reaching that conclusion, the district court rejected the Smith estate's contention that it could rely on the registration Harrick Music had filed to satisfy § 411(a).

The district court's construction of § 411(a) was too narrow. Harrick Music registered a claim to copyright in the "Spank" composition, specifically identifying Smith as the composer and informing the Copyright Office the work was not made for hire. Nothing in § 411(a) indicates that a composer who has agreed to assign his legal interest in a composition, along with the right to register it, in exchange for royalties, may not rely on the registration his assignee files. Where a publisher has registered a claim to copyright in a work not made for hire, we conclude the beneficial owner has statutory standing to sue for infringement.

In reaching this conclusion, we are in good company. As best we can tell, the only other court of appeals to have addressed the issue held, under nearly identical circumstances, that composers who retained a beneficial interest could rely upon the registration their music publisher filed. *See Batiste*, 179 F.3d at 220-21 & n. 2. In that case, three brothers wrote a song entitled "Funky Soul" and then signed an agreement transferring all rights in the composition, including "the exclusive right to secure copyright," to a publisher in exchange for royalties. *Id.* at 219. The Fifth Circuit affirmed the denial of a motion to dismiss the brothers'

infringement claims for lack of standing, finding "no merit" in the contention that they "could not demonstrate that they had obtained or applied to obtain a valid copyright registration for 'Funky Soul.'" *Id.* at 220-21 & n.2. Composers who agree to assign their legal rights to a work in exchange for royalties, the court concluded, "may properly assert their copyright infringement claims as beneficial owners of [the publisher's] registered copyright." *Id.* at n.2; *see also Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 71 (2d Cir. 2001) (recognizing that magazine publisher could have registered copyright in article that author could have relied upon for standing to sue an alleged infringer, but finding no adequate registration of the article individually) , *abrogated in part by Reed Elsevier, Inc., v. Muchnick*, 559 U.S. 154 (2010).

For standing purposes, the leading treatise on copyright explains that the "plaintiff in court obviously need not be the same party who initially registered the subject work."[6] 3 Nimmer on Copyright § 12.02[B][1]. Moreover, cases interpreting the 1909 Act, which are instructive in interpreting the 1976 Act, recognized that "a publisher could obtain and hold a copyright in its name in trust for the true author," and in such circumstances "the author would thus have

---

[6] The defendants point out that this sentence is in a paragraph discussing the concept of divisibility of rights under the 1976 Act by contrast to indivisibility of copyright under the 1909 Act and using, as examples, exclusive and nonexclusive licensees. They fail to explain, however, why that matters and provide no explanation why the rule for registration should differ depending upon the type of ownership interest (a distinct element of statutory standing) a plaintiff has.

standing to sue as a beneficial owner." *Moran*, 827 F.2d at 183 (citing cases); *see Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1303 n.9 (11th Cir. 2012) ("[P]recedent . . . under the 1909 Copyright Act is instructive."), *cert. denied*, 133 S. Ct. 1810 (2013). Were we to ignore the weight of this authority and hold otherwise, redundant registrations would be necessary for statutory standing purposes every time legal and beneficial ownership of the same exclusive right rested with two distinct parties, even if they joined together in filing suit against an alleged infringer. Absent clear statutory language requiring it, we do not believe Congress would have intended such a result. We hold the Smith estate has adequately alleged facts to support its statutory standing to sue for infringement of the "Spank" copyright.

With this conclusion, it follows that we must also reverse the district court's denial of the estate's motion to amend the complaint.[7] "We will only reverse a

---

[7] The defendants contend we may affirm on either of two alternative grounds: that the estate failed to satisfy the local procedural rules regarding motions for leave to amend, or that the estate failed to demonstrate that it satisfied the good-cause standard applicable to the motion. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009). But the district court did not decide that Smith's estate had failed to show good cause or to comply with local rules, and those decisions are matters of discretion. *Fils v. City of Aventura*, 647 F.3d 1272, 1282-83 (11th Cir. 2011) (compliance with local rules); *S. Grouts & Mortars, Inc.*, 575 F.3d at 1240 (good cause to amend). With respect to a decision we would review only for an abuse of discretion, we generally decline to substitute our judgment about the matter when the district court has not yet decided it and leave the decision for the district court to make in the first instance. *See McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 489 n.7 (11th Cir. 1996) (explaining that, when reviewing a decision committed to the discretion of the district court that the court did not have occasion to make, "the more appropriate course is for us to allow the district court the opportunity to address that matter in the first instance."). We see no reason to depart from that sound practice in this case.

district court's denial of a motion to amend in instances in which the district court has clearly abused its discretion." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1231 (11th Cir. 2008) (internal quotation marks omitted). "[A] ruling based on an error of law is an abuse of discretion." *Young v. New Process Steel, LP*, 419 F.3d 1201, 1203 (11th Cir. 2005). The district court concluded amendment of the complaint would be futile because the estate lacked statutory standing. Because that decision was incorrect, the court abused its discretion in denying leave to amend the complaint.

For the same reason, the district court also abused its discretion in declining to exercise supplemental jurisdiction over the estate's breach-of-contract claim. The district court dismissed the claim based on its conclusion that all "federal claims ha[d] dropped out of [the] lawsuit . . . ." Because that premise was legally erroneous, the court erred in dismissing the pendent state-law claim.

The district court's conclusion regarding the estate's declaratory-judgment claim, however, is another matter. We review the district court's dismissal of a Declaratory Judgment Act claim for an abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-91 (1995); *see also* 28 U.S.C. § 2201(a) (providing that district courts "may" exercise jurisdiction over a declaratory-judgment claim). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare

the rights of litigants." *Wilton*, 515 U.S at 286.  The act "vest[s] district courts with discretion in the first instance[] because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289.

   In this case, the district court determined the Smith estate's claim seeking a declaration regarding the effectiveness of its § 203 copyright termination notices was not ripe for adjudication.  The court did not abuse its discretion in declining jurisdiction over the claim for that reason.  "In deciding whether a claim is ripe for adjudication or review, we look primarily at two considerations:  1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration."  *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1356 (11th Cir. 2013) (internal quotation marks omitted).  As best we can tell, the Copyright Office has neither accepted nor rejected the estate's termination notices.  Even if we rely upon the filing receipts the estate entered into the record, they expressly caution that the party's filing is "merely a preliminary step" and issuance of the receipt "do[es] not imply that any final determination has been made in the case."  And the receipts explain that "Official action . . . can be taken only after there has been a full examination of the claim following regular Copyright Office procedures."  *See Temple B'Nai Zion, Inc.*, 727 F.3d at 1356 ("[Ripeness] doctrine serves . . . [to] shield[] agencies from judicial interaction

until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." (alteration and internal quotation marks omitted)).

Moreover, the estate expressly alleged that the earliest date the termination notices could be legally effective is August of 2014. *See* 17 U.S.C. § 203(a)(3) (stating that termination may only be "effected . . . during a period of five years beginning at the end of thirty-five years from the date of execution of the grant; or, if the grant covers the right of publication . . . thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier"). Thus, even had the Copyright Office completed its review, the complaint's allegations indicate that the § 203 notices would not presently affect the parties' rights in the works the notices identify. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993) ("[D]eclaratory judgment remedies . . . are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution, that is to say, unless the effects . . . have been felt in a concrete way. . . ." (citations, footnote, and internal quotation marks omitted)). The issues are, therefore, not yet fit for adjudication and dismissal without prejudice would result in essentially no hardship at all for either party. Under these circumstances, we conclude the district

court did not abuse its discretion in dismissing without prejudice the estate's claim seeking a declaration of the validity of the estate's termination notices as premature.[8]

### III.

Accordingly, we believe the district court was within its discretion to decline to exercise jurisdiction over the estate's claim under the Declaratory Judgment Act and, therefore, affirm the dismissal of that claim without prejudice. But the district court's conclusion that the estate lacked statutory standing to maintain a copyright infringement claim with respect to the "Spank" composition was erroneous. For that reason, we vacate the dismissal of that claim. Because the court denied leave to amend and dismissed the estate's contract claims as a consequence of this same erroneous conclusion, we reverse those decisions as well. And we remand this matter for further proceedings consistent with this opinion.[9]

**AFFIRMED in part, REVERSED in part, and REMANDED**.

---

[8] The district court also concluded that the estate mooted its claim as to two notices the Copyright Office rejected without receipt by filing substitute notices with respect to the same works rectifying the deficiencies the Copyright Office had identified. On appeal, the estate makes no argument that the court's conclusion was incorrect as to the two earlier § 203 notices and has, therefore, abandoned any contention with respect to them. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012)

[9] As this appeal is not frivolous, the motion for sanctions filed by Harry Wayne Casey, Harrick Music, Inc., K.C. & The Sunshine Band, Inc., and Sunshine Sound Entertainment, Inc., is **DENIED**.