**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 1:12-cv-23795-UU

RONALD LOUIS SMITH, JR.,

      Plaintiff,

v.

HARRY WAYNE CASEY, *et al.*,

      Defendants.

_____/

## ORDER ON MOTION

THIS CAUSE is before the Court upon Defendants Harry Wayne Casey, K.C. & the Sunshine Band, Inc., Sunshine Sound Entertainment, Inc., and Harrick Music's (collectively, the "Sunshine Defendants") Motion for Partial Judgment on the Pleadings, D.E. 149.  This Motion is now fully briefed and ripe for disposition.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.  The Sunshine Defendants argue that Counts I-IV and VI of Plaintiff's First Amended Complaint, D.E. 129, should be dismissed.  For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

### I. Background and Procedural History

Plaintiff is the personal representative of the estate of Decedent Ronald Louis Smith ("Smith").  Plaintiff filed a Complaint on October 18, 2012, D.E. 1, alleging one count of copyright infringement, one count of breach of contract, and one count for declaratory judgment. This Complaint was dismissed on April 25, 2013, after the Court found that Plaintiff did not have statutory standing to allege copyright infringement.  D.E. 84.  The Eleventh Circuit reversed and remanded the case, holding that this Court's conclusion that Plaintiff lacked statutory standing to

maintain a copyright infringement claim was erroneous.  D.E.122.

On remand, Plaintiff filed a First Amended Complaint, D.E. 129, alleging the following six counts against the Sunshine Defendants and Defendants Jimmie Horace Horne and Joy Productions, Inc. (collectively, the "Horne Defendants"): (I) Breach of Implied Contract in Fact against three of the Sunshine Defendants; (II) Breach of Fiduciary Duty based on *Spank* composition against the Sunshine Defendants; (III) Breach of Fiduciary Duty based on *Spank* master against Defendants Harry Wayne Casey and Sunshine Sound; (IV) Intentional Copyright Infringement against Defendants Harry Wayne Casey, Sunshine Sound, and Harrick Music; (V) Copyright Infringement against the Horne Defendants; (VI) Misappropriation of Name and Likeness against Defendants Harry Wayne Casey, Sunshine Sound, and K.C. & The Sunshine Band.  The factual allegations taken from Plaintiff's First Amended Complaint are discussed below.

Smith was a songwriter, recording artist, and musician who wrote and performed music for various artists.  D.E. 129 ¶ 15.  He was a founding member of K.C. & The Sunshine Band in the late 1970s.  *Id.* ¶ 16.  In 1977, Smith authored a number of musical compositions and recorded demos of these compositions for a solo album.  *Id.* ¶ 17.  In 1978, Smith entered into an exclusive recording agreement, attached as Exhibit A to the First Amended Complaint, with Sunshine Sound Enterprises to complete recording of his solo album.  *Id.* ¶ 18.  As a part of this agreement, Smith agreed to "irrevocably and absolutely assign, convey and set over to Company the entire right, tile [sic] and interest (including the worldwide copyright and all extensions and renewals of such copy rights) in and to each and every Controlled Composition that is recorded hereunder."  D.E. 129-1 ¶ 18.

Pursuant to this paragraph, Smith was to execute a separate form songwriter agreement to formally assign the copyrights for each composition he wrote; if he failed to execute a form agreement, the recording agreement authorized Sunshine Sound Enterprises to execute a form agreement on his behalf.  *Id.*; D.E. 129 ¶ 20.  Neither Smith, nor Sunshine Sound Enterprises executed a form songwriter agreement for any of Smith's compositions from his first solo album, or for the *Spank* composition, during the term of the recording agreement.  D.E. 129 ¶¶ 21, 22.

In 1978, Sunshine Sound Enterprises commercially released one of Smith's compositions as a disco single, "*Party Freaks*," and commercially released Smith's solo album, titled "*Party Freaks, Come On.*"  *Id.* ¶¶ 23, 25.  In 1979, Sunshine Sound commercially released two of Smith's compositions as a disco single: "*Come on and Do It*" and "*Love Talk.*"  *Id.* ¶ 24.

After Smith had executed the recording agreement, he wrote the *Spank* composition and recorded a version of *Spank* featuring his vocal performance.  *Id.* ¶ 26.  *Spank* was not a part of the "*Party Freaks, Come On*" album; Plaintiff alleges that Smith had intended *Spank* to be on the second album he was to create with Sunshine Sound.  *Id.*  Smith subsequently recorded the *Spank* composition with the vocal performance of Defendant Horne, which became the *Spank* master track, and was commercially released by Sunshine Sound in 1979.  *Id.* ¶¶ 29, 30.

On March 1, 1979, Defendant Harrick Music registered a performing arts copyright registration with the U.S. Copyright Office for the *Spank* composition, and listed Harrick Music, Inc. as claimant of the composition and Smith as the sole author of the composition.  *Id.* ¶ 32.  Plaintiff attached the copyright registration as Exhibit B to his First Amended Complaint.  D.E. 129-2.

After the *Spank* master was recorded and released, the business relationship between K.C.

3

& The Sunshine Band and Smith deteriorated.  D.E. 129 ¶ 33.  Accordingly, on September 30, 1980, Smith and Sunshine Sound executed a mutual release agreement, which Plaintiff attached as Exhibit C to the First Amended Complaint.  D.E. 129-3.  The release states that "[a]ll recordings made by you during the term of the Contract (hereinafter referred to as the 'Masters') shall remain our property in accordance with and subject to all of the terms and provisions thereof, we shall remain obligated to you under the royalty provisions thereof with respect to said Masters, and you shall remain obligated to us under the terms and provisions thereof."  *Id.* ¶ 2(a). Plaintiff alleges that the execution of this release agreement allowed the copyright interest in all musical compositions written by Smith during the term of the recording agreement, including the *Spank* composition and the compositions from his solo album, to revert back to Smith.  *Id.* ¶ 41.

Plaintiff alleges that in the late 1980s, Smith learned that Defendants Harrick Music and Harry Wayne Casey were administering and commercially exploiting the *Spank* composition.  *Id.* ¶ 42.  From the late 1980s until November 28, 2011, Smith allegedly acquiesced to the Sunshine Defendants' administration of the *Spank* composition in exchange for writer share royalty payments.  *Id.* ¶ 43.  Plaintiff alleges that this created an implied in fact contractual relationship, which he dubs the Implied Administration Agreement, "whereby the Sunshine Defendants were obligated to pay and account to the Smith, and after his death to the Plaintiff, for the *Spank* Composition."  *Id.* ¶ 44.  Plaintiff also alleges that the Sunshine Defendants had a fiduciary duty to timely, accurately, and fully pay and account to Decedent Smith, and after his death to the Plaintiff, for the *Spank* composition.  *Id.* ¶ 45.  Plaintiff alleges that Smith placed his trust and confidence in the Sunshine Defendants to pay and account for the license fees and royalties from the *Spank* composition in light of their "superior knowledge with regard to the music business

and the licensing and collection of the profits." *Id.* ¶ 46.

Defendant Sunshine Sound began making limited and sporadic royalty payments to Smith for the *Spank* composition in 2002. *Id.* ¶ 48. Despite Smith's requests, Sunshine Defendants did not provide Smith with a complete royalty accounting statement in connection with earnings of the *Spank* composition or the *Spank* master. *Id.* ¶ 49. According to Plaintiff, Defendants Harry Wayne Casey and Harrick Music intentionally withheld compensation from Smith and only made limited payments of writer share royalties in connection with the *Spank* composition. *Id.* ¶ 50.

Plaintiff also alleges that Defendant Harry Wayne Casey, as a co-owner of the *Spank* master, owed Smith a fiduciary duty to provide complete royalty accounting statements in connection with earnings of the *Spank* master. *Id.* ¶ 53. Defendant Casey allegedly intentionally failed to provide Smith with a complete accounting for the *Spank* master. *Id.* ¶ 55.

Smith was attacked in October 2003 by a group of young men in Miami, Florida. *Id.* ¶ 57. As a result of this attack, Smith suffered a severe brain injury and was hospitalized from 2003 until his death on January 21, 2012. *Id.* ¶ 58. Smith was unable to talk or act for himself, and was declared permanently disabled and incapacitated by the Department of Veteran Affairs on July 1, 2004. *Id.* ¶¶ 59, 60. Consequently, Plaintiff only discovered Defendants' alleged conduct giving rise to this action in October 2011. He subsequently sent Defendants a cease and desist letter revoking any express or implied authority for the Sunshine Defendants to administer the copyright of the *Spank* composition or Smith's 50% ownership interest in the *Spank* master. *Id.* ¶¶ 61, 62. This letter was attached as an Exhibit to Plaintiff's Complaint. D.E. 129-5.

## II. Legal Standard

A district court may enter a judgment on the pleadings upon motion of either party at the

close of the pleadings.  Fed. R. Civ. P. 12(c).  "[J]udgment on the pleadings is proper when no

issues of material fact exist, and the moving party is entitled to judgment as a matter of law."

*Cunningham v. Dist. Atty's Office for Excambia Cty*, 529 F.3d 1237, 1255 (11th Cir. 2010).

When ruling on a 12(c) motion, courts look at the substance of the pleadings and any judicially-

noticed facts. *Id.*  A motion for judgment on the pleadings is governed by the same standard as a

motion to dismiss. *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.

1998).  Therefore, all well-pleaded allegations of the complaint are accepted as true and the

allegations are favorably construed to the non-moving party. *Cunningham*, 529 F.3d at 1255;

*Miami Herald Pub. Co. v. Ferre*, 636 F.Supp. 970, 974 (S.D. Fla. 1985).

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short

and plain statement of the claim showing that the pleader is entitled to relief."  While a court, at

this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as

true, this rule "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, the complaint's allegations must include "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  *Id.*  The plausibility standard requires more than a sheer possibility that a

defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*. Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id*. at 679.

### III. Discussion

#### A.      Count I - Breach of Implied Contract in Fact

Sunshine Defendants argue that Count I should be dismissed because Plaintiff has failed to plead sufficient facts to support breach of an implied-in-fact contract, and because Plaintiff's breach of contract claim is time-barred. The Court addresses each of these in turn.

##### i.      Whether Pleadings Are Sufficient

Defendants argue that Plaintiff does not sufficiently allege offer or acceptance of the implied contract, and that Plaintiff does not sufficiently allege how to calculate the amount of compensation owed under the implied contract. Plaintiff argues that its allegations regarding the implied administration agreement are sufficient because, under Florida law, no offer and acceptance need be demonstrated for an implied-in-fact contract.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. . . . To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (internal citations omitted).

"A contract implied in fact is one form of an enforceable contract; it is based on a tacit

promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1304 (S.D. Fla. 2012) (internal citations and quotations omitted).  "A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Id.*  An implied contract "requires the same elements as an express contract—a mutual intent to contract—and differs only in the parties' method of expressing mutual consent." *Solnes v. Wallis & Wallis, P.A.*, 13-61225-CIV, 2013 WL 3771341 (S.D. Fla. July 18, 2013) (internal quotations and citations omitted). "Common examples of contracts implied in fact are where one person performs services at another's request or where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid." *Baycare Health Sys., Inc. v. Med. Savings Ins. Co.*, 07-cv-1222, 2008 WL 792061, at *7 (M.D. Fla. Mar. 25, 2008) (internal quotations and citations omitted).

The facts alleged regarding the existence of the implied administration agreement are as follows: (1) the Sunshine Defendants began administering and commercially exploiting the *Spank* composition in the 1980s; (2) Smith discovered this in the late 1980s; (3) he "acquiesced" to their administration of the *Spank* composition in exchange for writer share royalty payments beginning in the late 1980s; and (4) Sunshine Sound began making limited and sporadic payments to Smith in 2002.  D.E. 129 ¶¶ 42-48.  These allegations are sufficient to support a claim that an implied in fact contract did arise between Smith and the Sunshine Defendants.  The allegations that Sunshine Sound eventually made royalty payments to Decedent Smith support a

plausible inference that Sunshine Sound also consented to an implied agreement.  Any further analysis of the parties' conduct and its meaning is inappropriate on a motion for judgment on the pleadings.  *See Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co.*, No. 07-80091 CIV, 2007 WL 1099124, at *2 (S.D. Fla. Apr. 10, 2007) ("Defendants argue that this course of conduct is insufficient to constitute an implied in fact contract, as there is no way to infer from Defendants' conduct that they intended to be bound by Plaintiff's alleged offer. However, this argument essentially attacks the merits of Plaintiff's claim, and this is inappropriate at the motion to dismiss stage. As the court noted in *Commerce P'ship 8098 Ltd. P'ship*, examination of the parties conduct is a fact-based inquiry, something that cannot be resolved in a motion to dismiss." (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. Dist. Ct. App. 1997)).

### ii.    Statute of Limitations

The applicable statute of limitations is four years to bring a "legal or equitable action on a contract, obligation, or liability not founded on a written instrument."  Fla. Stat. § 95.11. Defendants argue that the statute of limitations bars Plaintiff's breach of contract claim because any breach must have occurred in the late 1980s, and thus the statute of limitations would have long since run.  Plaintiff argues that Decedent Smith's incapacity tolled the statute of limitations. Plaintiff also argues that the duty to pay royalties accrues on a recurring basis, and that the failure to make each new disbursement creates a separate obligation to distribute royalties.  Plaintiff states he is only seeking royalty payments for royalties due within the statute of limitations time period.

"Florida case law consistently holds that a cause of action for breach of contract accrues

and the limitations period commences at the time of the breach. . . . However, where an

obligation is continuing in nature, a party's ongoing nonperformance constitutes a continuing

breach while the contract remains in effect."  *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*,

137 So. 3d 1081, 1095 (Fla. Dist Ct. App. 2014) (reversing trial court's dismissal of breach of

contract claim where plaintiff alleged that defendants had breach a contract in a continuing nature

by charging annual fees and dues in excess of initial membership fee) (internal citations and

quotations omitted); *see also Persaud v. Bank of America, N.A.*, No. 14-21819-CIV, 2014 WL

4260853, at *11 (S.D. Fla. Aug. 28, 2014) (denying motion to dismiss because "of the

continuous nature" of the alleged conduct).

 Plaintiff alleges that "Defendants have continuously breached the Implied Administration

Agreement by failing to pay and account to Decedent Smith for the *Spank* Composition royalties

due under the Implied Administration Agreement on a quarterly or semi-annual basis."  D.E. 129

¶ 84.  Accepting this as true, Plaintiff's breach of contract claim is not time-barred because

Defendants continually breached their duties to provide Plaintiff with royalties and an accounting

statement.

 Plaintiff has also pled sufficient facts that could show tolling of the statute of limitations.

Florida law provides that a statute of limitations may be tolled where there is an "adjudicated

incapacity, before the cause of action accrued, of the person entitled to sue."  Fla. Stat. §

95.051(d).  The action, however, must commence within seven years after the event giving rise to

the cause of action.  *Id.*  Plaintiff alleges that Decedent Smith's attending physicians and the

Department of Veteran Affairs declared him permanently disabled and incapacitated as of July 1,

2004.  D.E. 129 ¶ 60.  The Florida statute does not define what is meant by "adjudicated" and it

is plausible that the Department of Veteran Affairs' declaration may suffice and that the Statute of Limitations is therefore tolled for claims arising after July 1, 2004. Accordingly, Plaintiff may be able to recover for any continuing breach that occurred after Decedent Smith's incapacity in 2004, so long as the lawsuit was filed within 7 years of the breach. The Court cannot conclusively find that the statute of limitations bars Plaintiff's claim, especially given the factual ambiguities regarding the statute of limitations that remain. *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1252 (11th Cir. 2003) ("[T]he Court concludes that the statute of limitations issue cannot be resolved at this stage of the litigation because such resolution would depend either on facts not yet in evidence or on construing factual ambiguities in the complaint in Defendants' favor, which would be inappropriate.").

      **B.**      **Count II and Count III - Breach of Fiduciary Duty**

      Defendants argue that Counts II and III should be dismissed because Plaintiff has failed to plead sufficient facts to support the existence of a fiduciary duty, and because these claims are barred by the statute of limitations. The Court finds that Plaintiff has failed to sufficiently allege the existence of a fiduciary duty and therefore does not address the parties' arguments regarding the statute of limitations.

      "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). "A fiduciary relationship may be either express or implied." *Hogan v. Provident Life & Accident Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009). "Express fiduciary relationships are created by contract or legal proceedings. . . . Implied fiduciary relationships are premised upon the specific factual situation

surrounding the transaction and the relationship of the parties and exist where confidence is reposed by one party and a trust accepted by the other." *Id.* (internal quotations and citations omitted). "Thus, the plaintiff must allege both that the plaintiff placed trust in the defendant and the defendant accepted that trust." *Id.* "[W]hen parties deal at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Id.* (citing *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. Dist. Ct. App. 2003)).

Plaintiff has alleged the following regarding Decedent Smith's relationship with the Sunshine Defendants: (1) the Sunshine Defendants owed a fiduciary duty to Decedent Smith for the *Spank* Composition based on their role as music publishing administrators; (2) Defendant Harry Wayne Casey owed a fiduciary duty to Decedent Smith because he was a joint owner of the *Spank* Master; and (3) the Sunshine Defendants had superior knowledge regarding the music business and the licensing and collection of profits, which prompted Decedent Smith to place his trust and confidence in the Sunshine Defendants to pay and account for license fees and royalties from the *Spank* Composition and the *Spank* Master. D.E. 129 ¶¶ 45, 46, 53, 54. Plaintiff then argues that the "writer/publisher dynamic" established the existence of a fiduciary relationship, and then cites a Second Circuit case discussing New York law to support this argument. *See Nolan v. Sam Fox Publ'g Co.*, 499 F.2d 1394, 1400 (2d Cir. 1974) ("It is true that several New York courts have mentioned the trust elements that are part of the relationship between a writer and a publisher.").

Florida law recognizes that certain relationships necessarily impose a fiduciary duty on one or both parties. This includes the following: an insurance broker or insurer owes a fiduciary

duty to an insured; joint venturers owe fiduciary duties to one another; a title agent owes a fiduciary duty to a buyer and seller; and corporate directors and officers owe a fiduciary duty to the corporation and its shareholders. *Orzechowitz v. Nova Se. Univ.*, No. 13-62217, 2014 WL 1329890, at *4 (S.D. Fla. Mar. 31, 2014) (listing the types of relationships where a fiduciary duty exists). Plaintiff has not pleaded that Smith's relationship with Sunshine Defendants falls under any of these categories. "In other instances, where there is no fiduciary duty established under the law, Florida courts may still recognize a fiduciary duty based on the specific actions of the parties." *Id.*

Plaintiff does not allege any facts regarding how the Sunshine Defendants accepted or fostered Smith's trust and confidence. The allegations only support an inference that the parties dealt with each other at arm's length and had either an express or implied contractual relationship. Whether or not a contract actually existed between the parties, there are no facts alleged showing a special relationship between the parties where Sunshine Defendants went beyond their contractual duties and developed a fiduciary relationship with Smith. As such, a claim for breach of fiduciary duty cannot survive. *Bruhl v. Price WaterhouseCoopers Int'l*, No. 03-23044-CIV, 2008 WL 899250, at *3 (S.D. Fla. Mar. 31, 2008) (dismissing breach of fiduciary duty claim where there were no allegations that defendant "stepped out of its contractual role" or "developed a special relationship and undertook a duty beyond those duties already assumed" under any contract).

It is also insufficient that Smith was a writer and Sunshine Defendants acted as a music publisher. First, Plaintiff's argument is premised on the application of New York law, and this case arises under Florida law. Second, even under New York law, courts have "repeatedly

rejected the existence of a fiduciary relationship between recording artists and their record label," and without "special circumstances, courts have routinely held that no fiduciary relationship exists between a music publisher and composer as a matter of law." *Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, at 482 (S.D.N.Y. 2009) (internal citations and quotations omitted). Plaintiff has not alleged any "special circumstances" that would give rise to a fiduciary relationship between Smith and the Sunshine Defendants.  Accordingly, Count II and Count III will be dismissed.

### C.      Count IV - Intentional Copyright Infringement

Defendants argue that Count IV should be dismissed because: (1) Plaintiff does not plead that the Sunshine Defendants authorized, directed, or approved any allegedly infringing acts; and (2) Plaintiff fails to plead sufficient facts to establish his ownership of the copyright to the *Spank* Composition.  Defendants also argue that Plaintiff has improperly requested statutory damages per infringement.

#### i.      Allegations Regarding Sunshine Defendants' Infringement

Defendants argue that Plaintiff does not adequately allege how Harry Wayne Casey, Sunshine Sound, and Harrick Music either authorized, directed, approved, or participated in any alleged infringement.  Plaintiff contends that alleging "the Sunshine Defendants continued to administer and commercially exploit the *Spank* composition" is sufficient.  D.E. 129 ¶ 103. Neither party cites any case law, except for the pleading standard set forth in *Iqbal* and *Twombly*.

To state a claim for copyright infringement, Plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247-48 (11th Cir. 1999) (internal citations and quotations

omitted).

Plaintiff alleges that the Sunshine Defendants infringed Decedent Smith's copyright by "copying, distributing, synchronizing, creating derivative works, licensing and exploiting the *Spank* Composition" and then lists fourteen specific acts that allegedly constitute infringement. D.E. ¶ 105.  Although this does not state how, exactly, Sunshine Defendants participated in the alleged infringement, it is sufficient to survive a motion to dismiss.  Importantly, Plaintiff has sufficiently alleged that Defendants had access to the *Spank* Composition and that the *Spank* Composition was used in unauthorized works.  *See Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999) ("If the plaintiff does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'").  Without being "privy to Defendants' actions," Plaintiff is "unable to pinpoint the specific acts" that transpired.  *Ordonez-Dawes v. Turnkey Properties, Inc.*, No. 06-60557, 2007 WL 1614515, at *3 (S.D. Fla. Apr. 5, 2007) (allowing copyright infringement claims where plaintiff alleged that defendants "disseminated" plaintiff's images to third parties).

### ii.    Allegations Regarding Copyright Ownership

Defendants argue that Plaintiff does not sufficiently allege ownership of a valid copyright because Plaintiff's allegation that the Release Agreement caused the copyright ownership of the *Spank* Composition to revert back to Smith is insufficient.  According to Defendants, Section 203 of the Copyright Act "provides the sole basis for involuntarily terminating a copyright assignment for a work transferred on or after January 1, 1978" through a specific notice and recordation procedure.  D.E. 149 at 11.  Defendants also contend that because Harrick Music was

not a party to the release agreement, any rights assigned to Harrick could not revert to Smith via the release agreement. Finally, Defendant argues that the copyright registration proves that Harrick is the legal owner of the copyright to the *Spank* composition and therefore Smith, as the beneficial owner, cannot sue Harrick for infringement.

Plaintiff responds that the release agreement applies to all assignees of Sunshine Sound Enterprises, which would include Harrick Music, and therefore copyright ownership reverted to Smith when the release agreement was executed. Plaintiff contends that this was a voluntary transfer, not an involuntary transfer, and therefore Section 203 does not apply. Plaintiff also argues that because there is no written agreement transferring copyright ownership in the *Spank* Composition, Defendants do not have an ownership interest in the composition. Finally, Plaintiff contends that the copyright registration is only *prima facie* evidence of copyright ownership and not conclusive evidence of who owns the copyright in the *Spank* Composition.

Plaintiff alleges the following regarding copyright ownership of the *Spank* Composition: (1) Section 204 of the Copyright Act requires a written agreement transferring an ownership interest or exclusive license in copyright; (2) Smith did not execute a form songwriter agreement and therefore did not transfer any copyright interest in ownership for the *Spank* Composition to Harrick Music; (3) Defendant Harrick Music registered a copyright registration form for the *Spank* Composition listing Smith as the sole author on March 1, 1979; (4) the release agreement reserved copyright ownership of only the Smith Masters to Sunshine Sound Enterprises; and (5) after the release agreement, Smith never executed a written agreement transferring copyright interest in the *Spank* Composition. D.E. 129 ¶¶ 27, 28, 32, 36, 38.

These allegations are sufficient to survive a motion for judgment on the pleadings

because they "apprise the defendants of the facts upon which plaintiff bases [his] claim." *MTM Television Distribution Grp., Ltd. v. Public Interest Corp.*, No. 91-1519-CIV, 1992 WL 80625, at *2 (M.D. Fla. Mar. 24, 1992) (finding allegations of copyright ownership sufficient) (quoting *Apr. Prods., Inc. v. Strand Enters., Inc.*, 79 F. Supp. 515, 516 (S.D.N.Y. 1948)).  Defendants' arguments to the contrary are unavailing.

First, as Defendants appear to agree by not addressing this issue in their Reply, Section 203 of the Copyright Act only governs involuntary transfers of assigned copyrights back to the author or his heirs.  As alleged, the release agreement was not an involuntary transfer and therefore Section 203 is inapplicable.

Second, it is irrelevant that Harrick Music was not a party to the release agreement because the release agreement applies to both Sunshine Sound Enterprises and its successors and assigns, which includes Harrick Music.  D.E. 129-3 ¶ 4.

Third, the copyright registration for the *Spank* composition is only *prima facie* evidence of copyright ownership and is not conclusive evidence as to who owns the copyright in the *Spank* composition.  *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 n.20 (11th Cir. 1996).  Thus the fact that Harrick Music is named as the copyright owner on the *Spank* composition's registration statement does not compel dismissal of this claim.

As noted by Defendants in their Reply, the release agreement provides that "[a]ll recordings made by [Smith] during the term of the [recording] Contract . . . shall remain [Sunshine Sound Enterprises'] property."  D.E. 129-3 ¶ 2(a).  Accordingly, it is plausible that because the *Spank* composition is not a recording, and the contract appears silent as to compositions, the *Spank* composition did not remain the Sunshine Defendants' property and any

17

ownership interest in the composition reverted back to Smith.  As such, Plaintiff has adequately alleged copyright ownership.

### iii.  Statutory Damages Per Infringement

Defendant argues that the Court should strike Plaintiff's request for statutory damages per infringement because this is contrary to the language in the Copyright Act.  Plaintiff contends that it is properly seeking damages per infringement by each separate Defendant.

The Copyright Act provides that a copyright owner may elect to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally."  17 U.S.C. § 504(c)(1).  If the copyright owner proves that infringement was committed willfully, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  *Id.* § 504(c)(2).  Plaintiff alleges that he is "entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c)(2) in the amount of $150,000 per infringement."  D.E. 129 ¶ 109.

The dispute between the parties centers around what Plaintiff means by "per infringement."  Defendant believes that Plaintiff is seeking statutory damages per, for example, download of the *Spank* instrumental ringtone on iTunes.  Plaintiff states he is seeking statutory damages from each Defendant per the Defendant's own infringement.

Defendant is correct that other circuits have held that § 504(c)(1) allows a copyright owner to recover statutory damages per work infringed, and does not allow for recovery of each infringement where there are multiple infringements of a single work by one defendant.  *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143-44 (5th Cir. 1992) ("So if a plaintiff proves

18

that one defendant committed five separate infringements of one copyrighted work, that plaintiff is entitled to only one award of statutory damages ranging from $500 to $20,000.").  This same case, however, supports Plaintiff's argument that he is entitled to statutory damages from each Defendant for its own infringement of the *Spank* Composition.  *Id.* ("And if a plaintiff proves that two different defendants each committed five separate infringements of five different works, the plaintiff is entitled to ten awards, not fifty.").  Accordingly, the Court will not strike Plaintiff's demand for statutory damages "per infringement" because Plaintiff is entitled to such relief under its interpretation of "per infringement."

Also, despite Defendants' assertions to the contrary, the Eleventh Circuit in *MCA Television* did not reach the issue of whether or not a plaintiff is entitled to statutory damages for every infringement by a single defendant of a single work because it was not properly raised before the district court.  *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 770 (11th Cir. 1996) ("Finally, Feltner asserts that the district court erred in calculating damages because it awarded damages for multiple airings of the same episode.  He argues that, under the Copyright Act, statutory damages are based on each 'work' infringed, rather than each infringement, see 17 U.S.C. § 504(c), and that if the same episode is aired three times, only one work has been infringed, not three. MCA responds that Feltner did not properly place this issue before the district court for determination and that, as a result, we cannot reach the merits of the issue. We agree with MCA.").

### D.    Count VI - Misappropriation of Name and Likeness Under Fla. Stat. § 540.08

Defendants argue that Count VI of the Amended Complaint must be dismissed because Plaintiff's allegations are insufficient to state a claim under Federal Rule of Civil Procedure 8,

and that any alleged commercial exploitation falls under a statutory exception or was consented to by Smith via the recording agreement he executed with Sunshine Sound Enterprises. Defendants also argue that the statute of limitations bars Plaintiff's claim.

Plaintiff responds that the recording agreement allowed Defendants to use Smith's likeness only for his solo career and not to promote K.C. & The Sunshine Band.  Plaintiff also argues that the release agreement revoked any consent to that Smith had previously given. Finally, Plaintiff argues that because the Amended Complaint alleges that Defendants are currently using Decedent Smith's likeness, the statute of limitations does not bar Plaintiff's claim.  Plaintiff does not address Defendant's arguments regarding the pleading's sufficiency.

Florida law prohibits the following:

No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any nature person without . . . express written or oral consent

Fla. Stat. § 540.08.  Exempt from this is any use of a "name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes."  Fla. Stat. § 540.08(4)(a).

This statute "is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher."  *Loft v. Fuller*, 408 So. 2d 619, 622-23 (Fla. Dist. Ct. App. 1981).  "Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else."  *Id.*

"[T]here are a number of Florida cases that hold the use of one's name, likeness, portrait

20

or photograph, whether in a news report, television show, play, novel, or the like is not actionable unless the individual's name or likeness is used to directly promote a commercial product or service, *separate and apart* from the publication." *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1258 (S.D. Fla. 2010) (emphasis in original).  The Restatement (Third) of Unfair Competition defines "the purposes of trade" as:

> The name, likeness, and other indicia of a person's identity are used 'for the purposes of trade' under the rule stated in § 46 if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user. However, use 'for the purposes of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses.

*Tyne ex rel. Tyne v. Time Warner Entm't Co.*, L.P., 204 F. Supp. 2d 1338, 1341-42 (M.D. Fla. 2002) (quoting *Restatement (Third) of Unfair Competition § 47*).

Plaintiff alleges the following regarding his claim under Fla. Stat. § 540.08:

> "75/124.  Defendant KC, Defendant Sunshine Sound, and Defendant K.C. & The Sunshine Band have exploited Decedent Smith's likeness, name and image for use in marketing, advertising, film, books, promotional materials and promotional documentaries for commercial gain without Decedent Smith's consent, or the consent of Plaintiff.

> 76/125.  Defendant KC, Defendant Sunshine Sound, and Defendant K.C. & The Sunshine Band are currently using Decedent Smith's likeness, name and identity in marketing, advertising, film, books, promotional materials and promotional documentaries for commercial advantage to promote Defendant KC's albums and tours without Decedent Smith's consent, or the consent of Plaintiff."

D.E. 129 ¶¶ 75, 76, 124, 125.

These pleadings are deficient under Federal Rule of Civil Procedure 8 and *Twombly* because they fail to provide a factual basis as to why Plaintiff is entitled to relief.  Instead they are conclusory allegations that amount to a "formulaic recitation of the elements of a cause of

action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  There are no allegations

regarding how Smith's likeness was used, what promotional materials it was used in, or how that

use was for the purposes of trade as required by the statute.

Furthermore, Defendant Harry Wayne Casey's albums and tours are publications

"intended to entertain and/or inform the public." *Fuentes*, 721 F. Supp. 2d at 1259.

Accordingly, use of Smith's likeness in connection with Casey's albums or tours, and any

incidental use in advertising the albums and tours, would not be actionable.  *Id.* ("Unlike

*Nottage*, the publication here, the Maria Elvira Live show, is a television program intended to

entertain and/or inform the public. There is no allegation that Mr. Fuentes's name and likeness

was used to promote some other product or service on the show.").  If Plaintiff had alleged that

Smith's likeness or name was "used to directly promote a commercial product or service, such as

T-shirts, hats, coffee mugs, etc.," then Plaintiff would be able to state a claim.  *Fuentes*, 721 F.

Supp. 2d at 1258.  As Plaintiff had a year and a half to craft and file his Amended Complaint, the

Court will not grant leave for Plaintiff to amend his Amended Complaint and address these

issues.  As such, Count VI will be dismissed.

ORDERED AND ADJUDGED that the Motion for Judgment on the Pleadings, D.E. 149,

is GRANTED IN PART and DENIED IN PART.  It is GRANTED as follows: Count II, Count

III, and Count VI, are DISMISSED.  The Motion is otherwise DENIED.

DONE AND ORDERED in Chambers, Miami, Florida, this 29th day of October, 2014.

_____

URSULA UNGARO

UNITED STATES DISTRICT JUDGE

copies provided:  counsel of record